NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TINA O'NEILL,<br><br>                Plaintiff,<br><br>      v.<br><br>JOHN POTTER, Postmaster<br>United States Postal Service,<br><br>                Defendant. | Civil Action No. 07-5045 (SDW)<br><br>**OPINION**<br><br>July 17, 2009 |

**WIGENTON**, District Judge

      Before the Court is Defendant's, John Potter, Postmaster of the United States Postal Service ("Defendant") Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(c) (collectively "Motions").  This Court has jurisdiction pursuant to 28 U.S.C. § 1331.  Venue is proper pursuant to 28 U.S.C. § 1391(b). The Motions are decided without oral argument pursuant to Fed. R. Civ. P. 78.  For the following reasons, Defendant's Motions are GRANTED in part and DENIED in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

      Plaintiff, Tina O'Neill ("Plaintiff"), has been a letter carrier for the United States Postal Service ("USPS") at the Bayonne, New Jersey Post Office since December 1986. (O'Neill Dep., 19:13, Mar. 16, 2009.)

      Plaintiff first sought EEO counseling on August 27, 2003 because she was allegedly (1) denied overtime and sick leave requests, (2) threatened by supervisors, and (3) disagreed with discipline issued to her.  (Rowe Decl., Ex. "K".)  On November 12, 2003, she filed a formal EEO complaint alleging: (1) race and sex discrimination, and (2) harassment by her supervisor Kim

Collins and Postmaster Richard Myhren. (*Id.*) On April 27, 2004, Plaintiff contacted the EEO dispute resolution center again alleging harassment, discrimination, and retaliation. (Rowe Decl., Ex. "L".) Plaintiff's 2003 and 2004 EEO complaints were consolidated and mediated together. (O'Neill Dep. 82:24-25.) The claims were mediated by Kathy Jaffe between Plaintiff, O'Neill Andre Hayne, Plaintiff's union representative, Ms. Collins, and Postmaster Rich Firstmeyer. (Rowe Decl., Ex. "M".) On June 29, 2004, the parties reached a settlement that states: 1) Postmaster Firstmeyer will discuss proper communication and listening techniques with the supervisors; 2) Plaintiff will communicate with her supervisor a detailed reason for necessary overtime before 3:00 PM; 3) Plaintiff and Ms. Collins agree to speak respectfully to each other; 4) Plaintiff's mail casing problems are to be discussed before she leaves the building; 5) Plaintiff shall notify the post office of problems on her Route immediately; and 6) Postmaster Firstmeyer shall inspect Plaintiff's Route.[1] (*Id.*)

On December 4, 2005, supervisor Mariset Aurora issued Plaintiff a letter of unauthorized overtime. (Collins Dep. 51:24-52:20, Mar. 16, 2009) On December 9, 2005, supervisor Kim Collins issued Plaintiff a seven day suspension because Plaintiff: (1) used unauthorized overtime, and (2) had a prior seven day suspension dated April 26, 2004. (Rowe Decl., Ex. "A".) Plaintiff disagreed with this suspension and pursued a grievance which was settled in-house between the Postmaster and union representative, Pete Maglio. (Collins Dep. at 55:3-4.) Postmaster Nick Iarossi and Pete Maglio downgraded Plaintiff's seven day suspension to a discussion and a five day suspension for the December 4, 2005 use of unauthorized overtime. (*Id.* at 52:18-55:3)

Plaintiff was out of work on sick and unpaid leave from December 9, 2005 to March 21, 2006. (Rowe Decl., ¶ 5.)

---

[1] The record does not provide a reason why Postmaster Firstmeyer agreed to inspect Plaintiff's route.

On January 4, 2006, Plaintiff informally contacted an EEO Dispute Resolution Counselor. (Def.'s Br. in Supp. Summ. J., ¶ 20.) On March 7, 2006, Plaintiff filed a formal EEO complaint alleging race, sex, and age discrimination. (Rowe Decl., Ex. "H" ("EEO Compl.")) On April 6, 2006, the EEO Compliance and Appeals Office defined the scope of Plaintiff's ensuing EEO investigation as discrimination based upon race, sex and age in regards to Plaintiff's December 9, 2005 Notice of Seven Day Suspension. (Rowe Decl., Ex. "I".) On October 4, 2007, Plaintiff notified the Administrative Law Judge ("ALJ") of her decision to file a complaint in District Court. (Cresci Verif., Ex. "J".)

On October 19, 2007, Plaintiff filed a six-count complaint in the District Court of New Jersey alleging violations of: (1) the First and Fourteenth Amendments of the United States Constitution; (2) Plaintiff's civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983"); (3) the Age Discrimination in Employment Act ("ADEA"); (4) Title VII – disparate treatment and hostile work environment, pursuant to 42 U.S.C. § 2000 *et. seq.*; (5) Title VII - Reprisal and Retaliation; and (6) the Americans with Disabilities Act ("ADA").

On November 16, 2007, the ALJ remanded the EEO complaint to the EEOC. On December 3, 2008, due to Plaintiff's intention to file suit in federal court, the EEOC dismissed Plaintiff's complaint. (Rowe Decl., Ex. "J".)[2]

On March 17, 2009, Defendant filed the instant Motions alleging: (1) the Postal Service had a legitimate business reason for disciplining Plaintiff on December 9, 2005; (2) Plaintiff failed to exhaust administrative remedies regarding her harassment, hostile work environment, and retaliation claims; (3) even if Plaintiff exhausted administrative remedies, she cannot establish the *prima facie* elements of discrimination or pretext; and (4) the Court lacks subject

---

[2] This Court notes the time difference between Plaintiff's filing of a complaint in federal court and the EEOC's dismissal of Plaintiff's action.

3

matter jurisdiction as to Plaintiff's claims under (i) the Civil Right's Act, (ii) the ADA, and (iii) the First and Fourteenth Amendments.

**DISCUSSION**

    A.    **SUMMARY JUDGMENT**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt about the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 318 (1986). Once the moving party meets its initial burden, the burden then shifts to the non-movant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Industrial Crafting Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citing *Anderson*, 477 U.S. at 255).

## I.   TITLE VII

Plaintiff carries the initial burden under Title VII of establishing a *prima facie* case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Defendant may rebut that presumption by articulating some legitimate, nondiscriminatory reason for the action taken. *Id.* at 802-03. If the Defendant meets his burden, Plaintiff must demonstrate that the reason was just a pretext for discrimination. *Stanziale v. Jargowsky*, 200 F.3d 101, 105 (3d Cir. 2000).

### a.   TITLE VII – DISCRIMINATION-DISPARATE TREATMENT

To establish a *prima facie* claim of discrimination under Title VII a plaintiff must demonstrate: (1) that he or she belongs to a protected class; (2) that he or she suffered a materially adverse employment action; and (3) that he or she was treated less favorably than similarly situated individuals outside of the protected class. *See McDonnell Douglas Corp.*, 411 U.S. at 802.

It is undisputed that Plaintiff is a member of a protected class – she is African-American and female.

#### (i) Materially Adverse Employment Action

The Supreme Court found that "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (internal citations and quotations omitted).

Here, Plaintiff and numerous co-workers allege that Plaintiff was harassed, intimidated, constantly watched over, micromanaged and singled out by her superiors on a regular basis. (O'Neill Affid., ¶¶ 5-17; Levine Affid., ¶¶ 3-12; Stewart Affid., ¶¶ 3-9; Walsh Affid., ¶¶ 4-7; EEO Compl. at 7.) Plaintiff also alleges that she was apprehensive about going to work and was unproductive because of said work environment. (EEO Compl. at 6.) This Court finds that given the evidence, a reasonable juror could find that Plaintiff's workplace "was so permeated with discriminatory intimidation . . . [as to] alter the conditions of [her] employment and create an abusive working environment." *Harris*, 477 U.S. at 21. In other words, a genuine issue of material fact remains as to whether Plaintiff suffered a materially adverse employment action.

### (ii) Treatment as Compared to Similarly Situated Individuals

"To be deemed 'similarly situated,' a plaintiff must show 'that the other employee's acts were of 'comparable seriousness' to [her] own infraction.'" *Crumpton v. Potter*, 305 F. Supp. 2d 465, 472 (E.D.Pa. 2004). Thus, "the individual with whom the plaintiff seeks to be compared must have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id*. (internal quotations omitted).

In this case, Plaintiff does not identify a comparable similarly situated employee whose acts were of comparable seriousness to her own. Plaintiff merely alleges that she "was treated less favorably than other similarly situated employees." (Compl., ¶ 27.) Plaintiff fails to identify any other non-African American or male employees with a similar history of failing to follow procedure or utilizing unauthorized overtime who were treated more favorably by their supervisors. Plaintiff cannot demonstrate that similarly situated employees were treated more favorably by generally alleging that she was treated less favorably than all other employees,

6

without regard to race or gender. Hence, no genuine issue of material fact exists regarding whether similarly situated employees were treated more favorably than Plaintiff; Plaintiff simply fails to allege that any such person exists. In other words, Plaintiff's evidence does not establish a *prima facie* claim of disparate treatment as defined by Title VII. Therefore, this Court grants Defendant's summary judgment motion regarding Plaintiff's Title VII disparate treatment claim.

### b.  TITLE VII – HOSTILE WORK ENVIRONMENT

#### (i) *Prima Facie* element of a Hostile Work Environment Claim

To establish a *prima facie* hostile work environment claim, a plaintiff must demonstrate: (1) he or she suffered intentional discrimination because of their race or sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race or sex in that position; and (5) the existence of respondeat superior liability. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir. 1996).

First, Plaintiff provides evidence that she suffered intentional discrimination because of her race and sex. Linda E. Stewart alleges in her affidavit that she personally heard post office management state "I have to deal with this Black Fuck again" in reference to Plaintiff. (Stewart Affid., ¶ 4.)  Also, Timothy Levine, in his affidavit, said "I have heard that . . . Nick Iarossi threatened 'I am gonna get that black bitch!' Likewise, Kim Collins referred to Tina O'Neill as a 'black bitch.'" (Levine Affid., ¶ 8.)  Thus, Plaintiff has produced three overtly racially discriminatory remarks and two remarks probative of sex discrimination.

Second, the evidence supports Plaintiff's allegation that the discrimination was both pervasive and regular. Courts do not look at every instance of discrimination or harassment in a vacuum, but rather evaluate all instances of harassment, discrimination, or intimidation as it

relates to the work environment as a whole. *See Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 155 (3d Cir. 1999). The Third Circuit found that a plaintiff properly alleges pervasive discrimination when the Plaintiff alleges that her supervisor singled her out for especially harsh treatment over an elongated period. *Abramson v. William Patterson College*, 260 F.3d 265, 280 (3d Cir. 2001).

Plaintiff's co-workers allege that harassment towards Plaintiff took place continually over a long period of time. (O'Neill Affid., ¶¶ 5-17; Levine Affid., ¶¶ 3-12; Stewart Affid., ¶¶ 3-9; Walsh Affid., ¶¶ 4-7.) Timothy Levine alleges that "Tina was a target of management" and that "[harassing] treatment was only for Tina O'Neill." (Levine Affid., ¶¶ 5, 7.) Linda Stewart alleges "management went out several times a day to micromanage Tina O'Neill and not toward others." (Stewart Affid., ¶ 3.) This is sufficient to support a reasonable juror finding that the discrimination was regular and pervasive.

Third, the harassment detrimentally affected Plaintiff. Plaintiff alleges that she was apprehensive about going to work and was unable to complete her work effectively because of the constant micromanaging by her superiors. (EEO Compl. at 6.) Moreover, Plaintiff's co-worker alleges that Plaintiff saw a psychologist, suffered a breakdown, lost weight and suffered depression because of said harassment. (Levine Affid., ¶ 11.) This is sufficient to support a reasonable juror finding that Plaintiff was detrimentally affected by the alleged discrimination.

Fourth, a reasonable person of Plaintiff's race or sex in Plaintiff's position would be detrimentally affected by the Defendant's conduct. Factors to be weighed in evaluating whether a reasonable person of the same race or sex would be detrimentally affected by the defendant's conduct include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

8

interferes with an employee's work performance." *Jensen v. Potter*, 435 F.3d 444, 451-52 (3d Cir. 2006). Furthermore, "the analysis must focus on the totality of the circumstances." *Id.* Mr. Levine alleges that: (1) Rick Myhren invaded Plaintiff's personal space and intimidated her; (2) Kim Collins and Rick Myhren ordered Plaintiff not to speak in the workplace, while others were allowed to do so; (3) Kim Collins stood behind Plaintiff and stared at her while Plaintiff was working; and (4) supervisors micromanaged Plaintiff. (Levine Affid., ¶¶ 3, 4, 7, 9.) This Court concludes that a reasonable juror could find that, given the totality of the circumstances alleged, a reasonable African-American or female postal employee would have been detrimentally affected by such targeted and constant harassing behavior.

Fifth, respondeat superior liability exists. "If supervisors create the hostile environment, the employer is strictly liable . . . ." *Jensen*, 435 F.3d at 452 (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)). If Plaintiff is successful in establishing that her supervisors created a hostile work environment, then respondeat superior liability would exist. (O'Neill Affid., ¶¶ 5-17; Levine Affid., ¶¶ 3-12; Stewart Affid., ¶¶ 3-9; Walsh Affid., ¶¶ 4-7.)

Plaintiff's evidence establishes a *prima facie* claim of a hostile work environment pursuant to Title VII. To that end, this Court denies Defendant's Summary Judgment motion regarding same.

### (ii). Pretext

Defendant has provided the Court with a legitimate reason for the employment action, thus we will proceed to analyze pretext.[3]

To evidence pretext, Plaintiff must "[submit] evidence from which a [juror] could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that

---

[3] Defendant alleges that "Plaintiff had abused overtime for six days and had failed to follow procedure numerous times." (Def.'s Br. in Supp. Summ. J; Rowe Decl., Ex. "A".) As such, Defendant has met its minimal burden of showing that it had legitimate business reasons for disciplining and closely watching Plaintiff.

9

an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Kautz v. Pro-Met Corp.*, 412 F.3d 463, 465 (3d Cir. 2005).

Racial and sexual slurs made towards an employee by a supervisor cannot be characterized as stray remarks. *See Antol v. Perry,* 82 F.3d 1291, 1301-02 (3d Cir. 1996). The Third Circuit in *Antol* held that derogatory remarks made by a supervisor about the plaintiff were strongly probative of discriminatory animus. *Id.*

In this case, Ms. Stewart recalls that supervisors made both racial and gender based derogatory comments in reference to Plaintiff. (Bruk Decl., ¶5.)[4] Mr. Levine also recalls Plaintiff being referred to in a derogatory racial and gender manner. (Bruk Decl., ¶ 11.) A reasonable jury could conclude, based on the record, that multiple supervisors harassed Plaintiff because of her race and sex and thus consequently find Defendant's legitimate business reasons to be pretext. Therefore, genuine issues of material fact remain and Defendant's Motion for Summary Judgment regarding Plaintiff's Title VII hostile work environment claim is denied.

### c. TITLE VII – RETALIATION

#### (i) *Prima Facie* Retaliation Claim

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must produce evidence that: "(1) she engaged in protected activity; (2) the employer took an adverse employment action against her; and (3) there is a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006) (internal quotations omitted).

First, Plaintiff engaged in a protected activity by filing EEO complaints in 2003, 2004 and 2006. (Rowe Decl., Ex. "I".)

---

[4] Ms. Stewart is unwilling to say which supervisor made the remarks.

Second, as discussed *supra*,[5] Plaintiff has produced evidence that she suffered an adverse employment action as the result of Defendant's actions.

Third, a reasonable juror could find that Plaintiff's discriminatory treatment was causally connected to her protected activities. Plaintiff's co-workers allege that after Plaintiff filed her EEO complaints, Ms. Collins increased the pressure on Tina O'Neill, began micromanaging her, that arguments, pressure and harassment increased, and that the workplace became hostile. (Walsh Affid., ¶ 6; Levine Affid., ¶ 3.) Furthermore, this alleged harassment took place within three months of Plaintiff filing her 2006 EEO complaint. (O'Neill Affid., ¶¶ 9-17.) Because of the time period between the complaints, the harassment, and the observations of Plaintiff's coworkers, this Court is satisfied that Plaintiff is able to evidence a causal connection between her protected activity and the adverse employment action.

### (ii) Pretext

Defendant has provided the Court with a legitimate reason for the action, thus we will proceed to analyze pretext.[6] Plaintiff rebuts Defendant's presumption and provides evidence of pretext. Plaintiff filed EEO complaints in 2003, 2004, and 2006. (Rowe Decl., Ex. "I".) Plaintiff alleges that her supervisors engaged in harassing conduct in June 2006. (O'Neill Affid., ¶¶ 9-17.) Also, an inference of causality can be made if there is a short window of time between the protected activity and the alleged adverse employment action. *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007). Moreover, Plaintiff's co-workers allege an increase in targeted harassment toward Plaintiff after she filed her third EEO complaint. (Walsh Affid., ¶ 6; Levine Affid., ¶ 3.) The statements of Mr. Walsh and Mr. Levine along with the

---

[5] This Court discusses Defendant's adverse employment action on pages 6-7 in section A(I)(a)(i) of the opinion.
[6] Defendant alleges that "Plaintiff had abused overtime for six days and had failed to follow procedure numerous times." (Def.'s Br. in Supp. Summ. J; Rowe Decl., Ex. "A".) As such, Defendant has met its minimal burden of showing that it had legitimate business reasons for disciplining and closely watching Plaintiff.

11

relatively short time gap between Plaintiff filing her complaint and the start of the alleged discriminatory actions, provide enough evidence that a reasonable jury could infer a causal connection between Plaintiff's protected activity and the adverse employment action. As such, Plaintiff has met her burden of demonstrating pretext. Therefore, a genuine issue of material fact remains and Defendant's Motion for Summary Judgment regarding retaliation is denied.

## II.     ADEA

To demonstrate a *prima facie* case under the ADEA, a Plaintiff must establish that "1) she is a member of the protected class, *i.e.*, at least 40 years of age; 2) she is qualified for the position; 3) she suffered an adverse employment decision; and, 4) non-members of the protected class were treated more favorably." *Lyle v. Philadelphia Gas Works*, 151 Fed. Appx. 169, 171 (3d Cir. 2005) (citing *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995)).

First, it is undisputed that Plaintiff is a member of a protected class. Second, it is also undisputed that Plaintiff was qualified for the position. Third, as discussed above, Plaintiff has suffered an adverse employment action.[7]

Fourth and lastly, however, Plaintiff cannot establish that USPS employees under 40 were treated more favorably than USPS employees over the age of 40. Plaintiff fails to present any evidence showing that employees below the age of 40 in the Bayonne Post Office were treated more favorably than those employees aged 40 and above. (Bruk Decl. ¶16; Rowe Decl., Ex. "F".) To that end, Plaintiff cannot satisfy the fourth prong of her *prima facie* ADEA claim. Therefore, no material issue of fact exists and this Court grants Defendant's Motion for Summary Judgment regarding Plaintiff's ADEA claim.

---

[7] This Court discusses Defendant's adverse employment action on pages 6-7 in section A(I)(a)(i) of the opinion.

**B.     MOTION TO DISMISS**

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002). The "grounds of [the moving party's] entitle[ment] to relief require more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) (internal citations and quotations omitted). Additionally, a complaint must have "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1965).

**I.     EXHAUSTION OF ADMINISTRATIVE REMEDIES**

Before filing a Title VII discrimination suit, a federal employee must (1) file a formal complaint with the EEOC and (2) allow 180 days for the EEOC to try to resolve the dispute without litigation.  42 U.S.C. § 2000e-5(c) and (d) (2006).  If the agency does not file a decision within 180 days or if the agency issues a final decision, but the employee is unhappy with the decision, the employee may file a civil action in District Court within 90 days.  42 U.S.C. § 2000e-16(c) (2006).  However, a party is not required to file additional EEOC complaints, restarting the 180 day administrative investigatory period, when discriminatory actions continue after the filing of an EEOC complaint.  *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984). Moreover, a plaintiff has exhausted her administrative remedies if the acts alleged in the Title

VII suit fairly fall within the scope of the prior EEOC complaint or the investigation which arose therefrom. *Id.* Additionally, the parameters of the civil action in district court include acts that can "reasonably be expected to grow out of the charge of discrimination." *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976).

### a. Harassment

Plaintiff's EEO formal complaint letter clearly alleges harassment. Plaintiff's EEO complaint letter specifically states "because of the harassment that is towards me" and "I wish she [Kim Collins] . . . would . . . stop harassing me." (EEO Compl. at 6.) Also, Timothy Levine's January 12, 2006 letter attached to Plaintiff's EEO complaint states that he witnessed "constant harassment and intimidation of Tina O'Neill by Kim Collins, other supervisors, and Postmasters past and present" and that "management is constantly watching [Plaintiff's] every move." (*Id*. at 7.) Harassment is plainly alleged in Plaintiff's EEO complaint. Thus, this Court finds that Plaintiff's harassment claim falls "fairly within the scope of [her] EEOC complaint." *Waiters*, 729 F.2d at 237. Therefore, Plaintiff's harassment claim has been exhausted and Defendant's Motion to Dismiss regarding same is denied.

### b. Hostile Work Environment

Plaintiff's personal letter within her EEO formal complaint can reasonably be seen as an inference of a hostile work environment claim. Plaintiff's complaint letter states: "I shouldn't feel like bull---- I'm going to go through that job today? I should feel like I'm going to work . . . not mad and hating to be there" and "I already feel uncomfortable." (EEO Compl. at 6.) Additionally, Mr. Levine alleges in his support letter that "[m]anagement substitutes encouragement, good job, thank you, good morning, for harassment, frustration, and intimidation" and that he is "sick to [his] stomach how Bayonne Management attacks [his]

14

fellow carrier Tina." (*Id*. at 7.) It is reasonable that an allegation of hostile work environment may arise from such allegations. In other words, Plaintiff's hostile work environment claim can "reasonably be expected to grow out of [Plaintiff's] charge of discrimination." *Ostapowicz,* 541 F.2d at 398-99. Hence, Plaintiff's hostile work environment claim falls "fairly within the scope of [her] EEOC complaint." *Waiters*, 729 F.2d at 237. Therefore, this Court holds that Plaintiff exhausted her administrative remedies regarding her hostile work environment claim and Defendant's Motion to Dismiss regarding same is denied.

### c. Retaliation

Plaintiff's retaliation claim can reasonably be expected to grow out of her claim of discrimination. On October 14, 2008, EEOC Supervisory Administrative Judge Susan Flynn wrote Donald Spector, USPS counsel, and advised him that Plaintiff's attorney, Peter J. Cresci, included a basis for retaliation regarding the suspension in his Prehearing Statement. (EEO Compl. at 2; Cresci Verif., Ex. "I".) Plaintiff also alleges that her suspension was the product of retaliation because she "complained to officials of what [she] believed to be discrimination in employment." (Compl., ¶ 11.) Plaintiff's co-workers allege that the harassment increased and that management stopped protecting Plaintiff after her complaints. (Levine Affid., ¶¶ 3, 10; Walsh Affid., ¶¶ 6-7.) Thus a claim of retaliation reasonably grows out of Plaintiff's complaints. Also, because discriminatory actions allegedly continued after Plaintiff filed her EEOC complaint, this Court finds that Plaintiff exhausted her administrative remedies regarding her Title VII retaliation claim. Defendant's Motion to Dismiss Plaintiff's retaliation claim for failure to exhaust administrative remedies is denied.

## II. 42 U.S.C. § 1983

Section 1983 provides in relevant part: "[e]very person who, under color of State [law] . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (2006). Thus, to state a claim for relief under Section 1983, a plaintiff must allege, (1) the violation of a right secured by the Constitution or laws of the United States and, (2) that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988).

This Court lacks subject matter jurisdiction over Plaintiff's Section 1983 claims against Postmaster John Potter, because John Potter is a federal actor who acts under the color of Federal law. Plaintiff does not allege that she was deprived of her constitutionally protected rights by a person acting under color of state law. Rather, Plaintiff alleges that she was deprived of her constitutionally protected rights by John Potter, Postmaster of the USPS, in his official capacity. A claim against the Postmaster of the USPS in his official capacity is a claim against a federal employee acting under the color of federal law, not state law. *See* 39 U.S.C. § 201 (2006); *see also Hindes v. FDIC*, 137 F.3d 148, 158 (3d Cir. 1998). Consequently, because Plaintiff's Section 1983 claims are alleged against the Postmaster of the USPS acting under color of federal law and not state law, this Court lacks subject matter jurisdiction over Plaintiff's Section 1983 claims. *Dubois v. Abode*, 142 Fed. Appx. 62, 63 (3d Cir. 2005). Therefore, Defendant's Motion to Dismiss regarding the Section 1983 claim is granted.

### III. FIRST AND FOURTEENTH AMENDMENT CLAIMS[8]

If a federal employee's *Bivens*[9] claim "arises out of the employment context, the [Civil Service Reform Act of 1978] provides the comprehensive and exclusive set of remedies available to that individual." *Hontz v. Potter*, 2006 U.S. Dist. LEXIS 45325, *5 (E.D.Pa. July 5, 2006) (citing *Sarullo v. United States Postal Svc.*, 352 F.3d 789, 795 (3d Cir. 2003)). In other words, federal courts do not have subject matter jurisdiction to hear federal employees' constitutional tort claims arising from the employment context unless they are brought pursuant to the Civil Service Reform Act of 1978. *Id*. Consequently, because Plaintiff is a federal employee suing her federal employer for constitutional torts relating to employment discrimination without asserting a violation of the Civil Service Reform Act of 1978, this Court lacks subject matter jurisdiction. Therefore, Defendant's Motion to Dismiss is granted on this issue.

### IV. AMERICANS WITH DISABILITIES ACT

Any "corporation wholly owned by the government of the United States" is specifically exempted from the definition of "employer" under the ADA. 42 U.S.C.A. § 12111(5)(B)(i) (2006). The USPS is a corporation wholly owned by the government of the United States. *See* 39 U.S.C. § 201. Employees of the USPS have no remedy for employment discrimination under the ADA because the USPS is not considered an employer under the ADA. *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005). Furthermore, the Third Circuit has held that individuals are not liable for discrimination under the ADA. *Emerson v. Thiel Coll.*, 296 F.3d 184, 189 (3d Cir. 2002). Because the USPS is not an employer as defined by the ADA and individuals are not

---

[8] The complaint is unclear as to whether Plaintiff asserts her constitutional claims under 42 U.S.C. § 1983 or under *Bivens*. As such, this Court analyzes Plaintiff's constitutional claims under both standards.
[9] Constitutional claims against agents of the federal government are commonly referred to as *Bivens* claims. *See Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

liable under the ADA, this Court lacks subject matter jurisdiction over Plaintiff's ADA claim. Therefore, Defendant's Motion to Dismiss regarding Plaintiff's ADA claim is granted.

**CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss and Motion for Summary Judgment are GRANTED in part and DENIED in part.


                                                  **S/SUSAN D. WIGENTON, U.S.D.J.**

cc:  Madeline Cox Arleo, U.S.M.J.